# EXHIBIT A

PHILLIPS & ASSOCIATES
*Attorneys at Law*
45 BROADWAY, 28TH FLOOR, NEW YORK, NEW YORK 10006
TEL: (212) 248-7431 FAX: (212) 901-2107
WWW.NYCEMPLOYMENTATTORNEY.COM
A PROFESSIONAL LIMITED LIABILITY COMPANY

September 12, 2025

**Via Certified Mail**
Office of the New York City Comptroller
1 Centre Street, Room 1225
New York, NY 10007

**RE: Josephe LaBarbera v. The City of New York, et al**

Dear Sir or Madam:

Pursuant to General Municipal Law § 50-E, enclosed please find the Notice of Claim to be filed on behalf of Joseph LaBarbera.

Should you have any questions, please contact our office. Thank you for your attention to this matter.

Sincerely,

**PHILLIPS & ASSOCIATES,**
**ATTORNEYS AT LAW, PLLC**

Melissa Vo, Esq,
*Attorneys for Plaintiff*
45 Broadway, 28th Floor
New York, New York 10006
T: (212) 248-7431
F: (212) 901-2107
mvo@tpglaws.com

Enclosures

MV/cm

**NOTICE OF CLAIM**

-----------------------------------------------------------X

*In the Matter of the Claim of*

**JOSEPH LABARBERA**

-against-

**THE CITY OF NEW YORK *and* NEW YORK CITY DEPARTMENT OF TRANSPORTATION**

-----------------------------------------------------------X

TO: **NEW YORK CITY DEPARTMENT OF TRANSPORTATION**
55 Water Street
New York, NY 10041

**OFFICE OF THE NEW YORK CITY COMPTROLLER**
Attn: General Counsel
1 Centre Street, Room 1225
New York, NY 10007

**1. The name and address of the Claimant and Claimant's attorney:**

| Claimant | Attorney |
|---|---|
| Joseph LaBarbera | Melissa Vo, Esq. |
| C/O Phillips & Associates PLLC | Phillips and Associates, PLLC |
| | 45 Broadway, 28th Floor |
| | New York, NY 10006 |
| | (212) 248-7431 |
| | mvo@tpglaws.com |

**2. The nature of the claim(s):**

Claimant complains pursuant to The Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq.* ("ADA"); the New York State Human Rights Law, New York State Executive Law §§ 296, *et. seq.* ("NYSHRL"); and the New York City Human Rights Law, New York City Administrative Code §§ 8-107, *et. seq.* ("NYCHRL"), and seeks damages to redress the injuries he has suffered as a result of being discriminated and retaliated against on the basis of his actual and/or perceived disabilities.

**3. The time, the place where and the manner in which the claim arose:**

On or about May 15, 2022, Claimant was hired by Respondents as a seasonal "Assistant City Highway Repairer" ("ACHR") at Respondent NYC DOT'S Brooklyn location at 6080 Flatlands Avenue, Brooklyn, New York 11236 (the "58th Street Yard"). As an ACHR, Claimant

was responsible for repairing and maintaining New York City roads, which includes paving, shoveling, raking, driving work vehicles, milling roads, and filling in potholes. Upon information and belief, the working season for each year begins in March and ends in December. As such, Claimant earns approximately twenty-nine dollars ($29.00) an hour, and works approximately over forty (40) hours a week from March to December, making approximately $44,000 per year.

At all times relevant, Claimant was diagnosed and suffered from Atrial Septal Defect, Ulcerative Colitis, and Rheumatoid Arthritis. Atrial Septal Defect ("ASD") is a congenital heart defect that is present at birth. Ulcerative Colitis ("UC") is a chronic autoimmune inflammatory bowel disease that causes inflammation and ulcers in the colon and rectum. Rheumatoid Arthritis ("RA") is a chronic autoimmune disease that causes inflammation, pain, and stiffness in the joints.

In or around May 2022, Claimant apprised Respondent NYC DOT of his conditions when he was first hired, and was being treated for them with medication. Despite Claimant's conditions, Claimant's performance has been exemplary during the course of his employment with Collective Respondents.

About two months after Claimant was hired, Claimant began experiencing increased symptoms due to his UC and RA conditions. Notably, the symptoms and flareups caused Claimant to experience uncontrolled bowel movements and severe and chronic pain. As such, in or around July 2022, Claimant went to his District Supervisor, Respondent FERRARO, to inform him of Claimant's UC condition. Specifically, Claimant stated that UC makes it so that he has to go to the bathroom a lot more, and asked if he could use his personal car instead of a work truck so that he could more easily find parking to get to a bathroom and would not have to worry about accidentally defecating in the company vehicle. Respondent FERRARO'S response was, *"You know, I wouldn't let nobody else know this. You're lucky you have me as your boss, because anybody else would just put you on a truck right now and tell you to shit your pants all over the place."* Despite Claimant's request for accommodation, Respondent FERRARO forced Claimant to drive a company truck two days later.

Despite knowing about Claimant's anxiety which stemmed from his disabilities, Respondent FERRARO would taunt and humiliate Claimant in front of co-workers by jiggling the truck keys in front of him, then force Claimant to drive the company trucks. Other coworkers witnessed the harassment and joined in on the hazing. Claimant was repeatedly harassed and given derogatory and belittling nicknames such as "Diaper Boy" and "Shitty Pants". His coworkers would even say, *"Don't give [Claimant] coffee"* and laugh, insinuating to the crude nicknames that they also called Claimant.

A few weeks after Claimant's accommodation request, Claimant again tried to speak with Respondent FERRARO about granting Claimant's accommodation to drive his personal car to job sites in lieu of the company truck. Claimant reiterated that although he was working with his doctors to try and get his disabilities back under his control, he was feeling more anxious, embarrassed, humiliated, and desperate to find a working solution for his bowel emergencies. However, Respondent FERRARO dismissed Claimant's plea and concerns and simply said, *"My hands are tied. I have a business to run."*

During the entirety of Claimant's first season working with Respondents during 2022, Claimant was repeatedly mocked by Respondent FERRARO and encouraged others to do the same. At some point in time, Respondent FERRARO told Respondent SCHIAVO, another District Supervisor, about Claimant's disabilities. Instead of assisting Claimant, Respondent SCHIAVO also joined in on the harassment and bullying, which ramped up during Claimant's second season in 2023.

In or around March 2023, during the first week of Claimant's second season of working with Respondent NYC DOT, Claimant was assigned to pot hole duty with one of the paving groups ("Paving One Group"). Throughout Claimant's time during that season in the Paving One Group, Claimant's disabilities and physical condition became worse. This prompted a significant increase in the mockery that Claimant experienced.

Respondent SCHIAVO would make comments such as, *"Don't worry about the bathroom, grab a cup of coffee," "None of that anxiety about driving the truck with me. There's a new Sheriff in town,"* and *"Don't give me that bullshit about anxiety or your stomach. You'll do as I say. Remember, this isn't a real job."* Additionally, Claimant's coworkers would make insulting comments and jokes about Claimant's UC and ASD, which included calling Claimant a "pussy," "drama queen," "worry wort," and "baby." When Claimant protested the treatment and stated that his disabilities are life-threatening issues that were severely affecting his mental health, he was dismissed and told by his coworkers, *"Yeah, you're fine."* Collective Respondents were fully aware in the treatment that Claimant was receiving and did nothing to prevent it. In fact, Collective Respondents condoned, encouraged, and were implicit in said treatment.

In or around 2024, during Claimant's third season working with Respondent NYC DOT, Claimant noticed that the commute was taking a toll on his stomach much more than usual. Instead of going to the bathroom 3-4 times in the morning prior to arriving at work, his restroom breaks had increased to 5-7 times. This required more stops during Claimant's already long commute, and so Claimant had no choice but to request a transfer to a work site closer to his home.

On or around March 20, 2024, Claimant went to Respondent SCHIAVO to put in his transfer request to another NYC DOT location at 5 Dubois Avenue, Staten Island, New York 10310 ("Dubois Avenue Yard location") or the Glen Street Yard location (specific address unknown), which were closer to Claimant's residence. Initially, Claimant's written reason for the transfer was regarding his concerns for his health and need for accommodations. However, Respondent SCHIAVO said, *"I love how you new guys who have a year on the job want to put transfers in,"* and had Claimant redo the transfer paperwork to change the reason to *"learn different aspects of the company to seek growth."* Claimant, fearing the loss of his job and wanting to stay in his superior's good graces, begrudgingly agreed to the change.

As Claimant waited for a response to his transfer request, Claimant's working environment became increasingly hostile as his symptoms became worse. Claimant's coworkers continually disparaged him by calling Claimant "pussy," "weak," "hypochondriac," "overly dramatic," "baby," "whiner," and "chronic complainer." If there was work that Claimant could not do on a

job site, his coworkers would make fun of him and state in fake baby voices, *"What, is it the heart palpitations (sic) today or the stomach? Grow thicker skin."*

At the end of the work season, on or about November 18, 2024, after not receiving any response or decision on his first transfer request, Claimant went to Respondent FERRARO instead of Respondent SCHIAVO to submit a second transfer request. Again, Claimant detailed the reason for his transfer request was due to his health and need for accommodations. However, Respondent FERRARO stated, *"I wouldn't put a hardship in because, even if you get the hardship transfer, they will just put you back in Brooklyn in a few months."* Respondent FERRARO further stated that a regular transfer *"would put [Claimant] in a better position to not go back to Brooklyn. It doesn't look good putting down a disability as it could jeopardize your job."* Again, Claimant was talked out of putting his disabilities and need for accommodations as the main reason for the transfer. Instead, Claimant put a secondary reason that "[i]t would make it easier to be closer to home because parents are not in good health and for [Claimant's] high risk pregnant wife." While the reason was still true, Claimant was upset that his hardship transfer request was not being given the due attention and priority that it required.

On or about February 14, 2025, Claimant reached out to Respondent NYC DOT'S Office of EEO, Diversity & Inclusion ("EDI") to inquire about the status of his second transfer request. The response that Claimant received from EDI was that he had to complete a "Reasonable Accommodation Request form," which was different than the transfer requests that he had previously filled out with Respondents SCHIAVO and FERRARO. As such, Claimant submitted the paperwork and corresponding documents on or about February 20, 2025. Shortly thereafter, on or about March 10, 2025, Claimant went on paid paternity leave.

On or about March 21, 2025, Claimant received a transfer denial which stated that Respondent NYC DOT could not accommodate his request due to multiple factors, including "available space, yard recommendations, seniority, attendance, supervisor recommendations, as well as performance evaluations." Claimant, exhausted by the treatment that he had endured up to that point, finally reached out to Respondent NYC DOT'S Human Resource Department to request paperwork for a hardship transfer, on or about April 7, 2025. Claimant then submitted the paperwork and medical documentation on or about April 10, 2025.

Between April 22, 2025 and June 19, 2025, Claimant was in communication by email and phone with the EEO Investigator, Saba Maher ("Ms. Maher"), who was assigned to his accommodation request. Claimant also noted on or around May 20, 2025 that he would now have to take unpaid sick leave due to his disabilities, and questioned if it would interfere with his accommodation request to be transferred. However, Claimant never got a response to his question.

During these conversations, Ms. Maher offered demeaning "solutions", such as, *"Wear extra diapers. Bring extra clothing. And try to find a hidden garbage can to avoid ridicule."* Claimant also advised Ms. Maher on the harassment and mistreatment that he received by Collective Respondents, to which Ms. Maher simply stated that she sympathized with his situation. These statements themselves constitute harassment and reflect Respondents' failure to provide a reasonable accommodation. However, on or about June 19, 2025, Ms. Maher spoke to Claimant

on a phone call and stated that Claimant's hardship transfer request was once again denied *"because there are no open spots in Staten Island and because Staten Island is a desired work location."*

At one point, Ms. Maher did ask Claimant if he was open to working in a different location in Staten Island, to which Claimant agreed would be beneficial. To date, Claimant has not received any additional response or follow-up from Ms. Maher on his transfer request or his employment status.

Thereafter, on or about August 1, 2025, Claimant received a call from a new EEO Investigator, Angela Ball ("Ms. Ball"), who has since been assigned to his matter. During the call, Ms. Ball offered Claimant a transfer to a new division in Manhattan and suggested that Claimant take the train and ferry to get to and from the location, despite all of the information and details that Claimant had previously provided regarding his disabilities.

Claimant once again reiterated why the new location would not be an actual accommodation. Specifically, Claimant mentioned that the commute would not only be longer for him, but in the event of an accident, he would have nowhere to go on the train since there are no bathrooms. Claimant stressed that he needed to be placed in a location that is in the borough where he lived to avoid these complications. Ms. Ball stated that she would check for other locations in Staten Island to see if there were any open spots or available positions. Since then, Claimant has received no additional response or follow-up.

Claimant realized that Collective Respondents would not attempt to accommodate Claimant's disabilities and perceived his disabilities as an inconvenience.

Collective Respondents failed to engage in the interactive process and cooperative dialogue. Collective Respondents discriminated against and harassed Claimant because of his actual and/or perceived disabilities (Atrial Septal Defect, Ulcerative Colitis, and Rheumatoid Arthritis). But for the fact that Claimant has actual and/or perceived disabilities, Collective Respondents would not have treated Claimant differently. Collective Respondents created a hostile working environment, which unreasonably interfered with Claimant's work environment.

As a result of Collective Respondents' actions, Claimant felt and continues to feel extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed. As a result of the acts and conduct complained of herein, Claimant has suffered the loss of income, the loss of a salary, bonuses, benefits, and other compensation which such employment entails. Claimant has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

As Collective Respondents' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Claimant demands Punitive Damages as against the Collective Respondents

**4. Injuries/Damages Sustained:**

Claimant sustained multiple damages including, but not limited to loss of benefits, lost past/future wages, denial of benefits and leaves, pain and suffering, physical illness/injury, ongoing physical pain and suffering, compensatory damages, special damages, monetary damages, legal fees/costs, humiliation, stress, anxiety, loss of future employment, loss of contractual rights/benefits, loss of collective bargaining rights/benefits, damage to name and reputation, among other damages/injuries. Claimant is still unemployed and is accumulating damages daily. Claimant's damages have not yet been fully realized.

The undersigned Claimant therefore presents this claim for adjustment, payment, transfer, and other remedies to which he is entitled. You are hereby notified that unless Claimant's instant claim is adjusted and/or paid within the time provided by law from the date of presentation to you, the Claimant intends to commence an action on this claim.

Dated: New York, New York
September 12, 2025

Signed,

Melissa Vo, Esq.

**VERIFICATION**

STATE OF NEW YORK
COUNTY OF Richmond

I, Joseph LaBarbera, am the Claimant in the above-entitled action. I have read the foregoing complaint and know the contents thereof. The contents are true to my own knowledge except as to matters therein stated to be alleged upon information and belief, and as to those matters, I believe them to be true.

JOSEPH LABARBERA

Sworn to before me this
11 day of September, 2025

NOTARY PUBLIC

AMY VOLTAIRE
Notary Public - State of New York
No. 01VO0002556
Qualified in Richmond County
My Commission Expires 03/08/2027

**JURAT**

State of New York
County of Richmond } ss.

Subscribed and sworn to (or affirmed) before me this

11 day of September 2025 by
Date Month Year

Joseph Labarbera
Name of Signer No. 1

Name of Signer No. 2 (if any)

AMY VOLTAIRE
Notary Public - State of New York
No. 01VO0002556
Qualified in Richmond County
My Commission Expires 03/08/2027

*Place Notary Seal/Stamp Above*

*Signature of Notary Public*

*Any Other Required Information (Residence, Expiration Date, etc.)*

**OPTIONAL**

*This section is required for notarizations performed in Arizona but is optional in other states. Completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document.*

**Description of Attached Document**

Title or Type of Document: ____

Document Date: ____ Number of Pages: ____

Signer(s) Other Than Named Above: ____

©2019 National Notary Association